***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted March 17, reversed and remanded May 3, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHAYLEEN ELIZABETH TROUPE,
*Defendant-Appellant.*

Yamhill County Circuit Court
20CR43855, 19CR73573;
A176586 (Control), A176587

John L. Collins, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and David B. Thompson, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

Following her conditional guilty plea, defendant appeals from a judgment of conviction for delivery of methamphetamine and a probation-violation judgment extending her probation based in part on that same conduct.[1] On appeal, she contends that the trial court erred in denying her motion to suppress, which was premised in part on an argument that the officer unlawfully expanded the scope of a traffic stop by asking defendant questions about possible illegal drug activity. We review the trial court's denial of a motion to suppress for legal error and are bound by the trial court's factual findings if they "are supported by evidence in the record[.]" *State v. Middleton*, 294 Or App 596, 597, 432 P3d 337 (2018). We reverse both judgments and remand.

The parties agree that our decision is guided by *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019). Under that case, an officer's questions during a traffic stop must either be "reasonably related" to the purpose of the stop or have some other independent constitutional justification, such as reasonable suspicion that a crime has been committed. *Id.* at 712. Reasonable suspicion, in turn, requires that the officer suspect—based on specific and articulable facts—that the person committed or was about to commit a crime. *Id.* at 712-13. To establish that an officer had reasonable suspicion, a "court (1) must find that the officers actually suspected that the stopped person had committed a specific crime or type of crime, or was about to commit a specific crime or type of crime, and (2) must conclude, based on the record, that the officers' subjective belief * * * was objectively reasonable under the totality of the circumstances existing at the time of the stop." *State v. Maciel-Figueroa*, 361 Or 163, 182, 389 P3d 1121 (2017).

Here, defendant contends that the officer lacked reasonable suspicion to ask defendant about possible drug possession during a traffic stop. An officer pulled defendant over around 4:00 a.m. because she had her high beams on.

---

[1] The show-cause order alleged that defendant was in violation of her probation for failing to obey all laws, possession of controlled substances, failure to complete treatment, and failure to complete anger management, and she admitted to violating those conditions following the court's suppression ruling.

Defendant had a passenger, Snedden, with her. Another officer (and former probation officer), Pilon, went to the scene of the traffic stop. Pilon, having previously supervised both defendant and Snedden, believed that it was a violation of the conditions of their probation to be together.[2] Pilon also believed that both defendant and Snedden were on probation "for either possession or delivery" of a controlled substance. Additionally, Pilon knew that "we were receiving almost on a daily basis" reports that defendant and Snedden were "dealing illegal drugs" in the community. When Pilon arrived, the first officer was writing defendant a citation for driving while suspended. Pilon contacted an on-call probation officer, who then spoke with defendant, including asking her for consent to search. Pilon advised defendant that she did not have to consent to a search, and defendant asked for time to think about his request.

As defendant was thinking about the request for consent, Pilon asked Snedden for consent to a search. Snedden consented to a search of his person, and Pilon found three large, rubber-banded bundles of money, which Pilon estimated to be thousands of dollars. He said that he had won the money at a casino. Snedden denied having drugs on his person or around his area in the car, but when Pilon asked if defendant had any drugs on her or in the car, Snedden said "I don't know" and "I'm not sure."

After overhearing the exchange between Snedden and Pilon, the probation officer again asked defendant if she would consent to a search. After defendant did not respond directly to that request, Pilon told defendant that she needed to "just be honest" with him and asked whether she had drugs in the car. She eventually pointed to a case on the floor, she gave consent to Pilon to search it, and he found methamphetamine. The trial court denied defendant's motion to suppress the drugs, concluding that it would "tend to agree with [defendant] if it weren't for the fact that [defendant

---

[2] Defendant points out that this belief ultimately turned out to be incorrect, a fact that came to light when the court entered the judgment in this case. But because we limit our review to the facts available to the trial court when it decided the motion, *see State v. Mazzola*, 238 Or App 201, 203, 242 P3d 674 (2010), the fact that Pilon's understanding may have been incorrect is of no significance.

was] on probation and I think that's a game changer in this situation."

We disagree. Taken together, Pilon's questions about the presence of drugs and for consent to search were not supported by reasonable suspicion. The state maintains that it could reasonably infer that defendant and Snedden "might be together * * * dealing drugs and thus might have drugs on their persons or in the car." Although the constellation of facts might have led Pilon to subjectively believe that defendant had committed or was about to commit a crime, we cannot say that that belief was objectively reasonable on this record. We decline to assume that someone who is on probation for a drug offense and with someone who is also on probation for the same establishes reasonable suspicion that the defendant is committing or about to commit a drug-related crime. *See State v. Frias*, 229 Or App 60, 65, 210 P3d 914 (2009) ("whatever the inference that could be reasonably drawn about defendant's *past* drug use, there was no evidence of a current or imminent crime" as required for objective reasonable suspicion (emphasis in original)); *see also State v. Zumbrum*, 221 Or App 362, 369, 189 P3d 1235 (2008) ("The mere fact that a person associates with another person involved with methamphetamine does not support a reasonable suspicion [that] that person is also involved with methamphetamine."). That holds true even in light of frequent reports that defendant was dealing drugs with Snedden. It may very well be that those reports contributed to Pilon's subjective belief that defendant may have drugs on her person or in the car. But absent more information about those reports—such as where they came from, who the "we" was that received them, and any greater context for the reports—they add little to the reasonable suspicion calculation. Lastly, the fact that an officer pulled them over in early morning hours likewise adds little. *State v. Davis*, 286 Or App 528, 535, 400 P3d 994 (2017) (the fact that the defendant was driving at 4:00 a.m. "add[s] little, if anything, to the reasonable suspicion calculus").

We appreciate the state's point that we are not to view any of these facts in isolation but rather in the totality of the circumstances. *See, e.g.*, *Maciel-Figueroa*, 361 Or at 182 (assessing whether reasonable suspicion exists requires

consideration of the totality of the circumstances). That mandate does not alter our conclusion here. In combination, the facts simply do not establish that the officer's belief that defendant was engaged in a drug-related offense was objectively reasonable. We therefore reverse and remand both judgments on appeal.

Reversed and remanded.